**PUGET SOUND FREIGHT LINES et al. v. MARSHALL, Deputy Com'r.**

No. 9874.

Circuit Court of Appeals, Ninth Circuit.

Feb. 14, 1942.

---

Bogle, Bogle & Gates, Stanley B. Long, and W. T. Beeks, all of Seattle, Wash., for appellants.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Harry Sager, and Gerald D. Hile, Asst. U. S. Attys., all of Seattle, Wash., for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This action is one in admiralty. The appellants, Puget Sound Freight Lines and Pacific Indemnity Company, an employer and its insurance carrier, respectively, filed a libel in the District Court of the United States for the Western District of Washington, Northern Division, seeking to have set aside an award in favor of one F. Jondro, which award was rendered under the Longshoremen's and Harbor Workers' Compensation Act, c. 509, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., by Wm. A. Marshall, Deputy Commissioner of the Fourteenth Compensation District, established under the provisions of said Act. The District Court approved the award and ordered the libel dismissed with prejudice. This appeal followed.

The parties to this case are in accord as to the facts, which are substantially as follows:

Appellant Puget Sound Freight Lines, the employer of F. Jondro, is the owner and operator of the motor vessel "Belana", which is devoted exclusively to the carrying of cargo on the inland waters of Puget Sound in the state of Washington. The Belana's certificate of inspection permits her to carry besides certain required men, other needed persons not connected with the

navigation of the vessel. The Belana calls at many small ports on Puget Sound where longshoremen are not available, and to meet contingencies she carries within the permissive classification of her certificate of inspection one jitney driver, two "stevedores", and four deckhands or truckers, who perform the work of loading and discharging cargo ordinarily done by longshoremen, although on occasions regularly employed longshoremen are used in addition. F. Jondro was employed as one of the "stevedores".

A "stevedore", such as this employee on this ship, works eight hours per day for an average of twenty-six days a month, receives a monthly salary, and is provided with meals and sleeping quarters on board the vessel as part of his contract of employment, but lives ashore for at least four days each month and whenever the vessel is laid up for repairs. He is not required to have an able seaman's certificate, but, as specified by law (46 U.S.C.A. § 643), he must have a seaman's certificate of identification as a condition precedent to employment.

In their brief appellants have very well described the duties of a "stevedore":

"The stevedore, as was the claimant [F. Jondro] in this case, loads and unloads the hand trucks and stows cargo while the deckhand pushes the trucks during loading and discharging operations. The stevedore's duties in addition require him to put the cargo plank out upon arrival at a dock and to take it in upon departure. His sole duties are in relation to the loading and discharging of cargo although on occasion a stevedore may handle a line as an incident to his main work, but is not required to do so. He has no duties while the vessel is underway. He is in reality a traveling longshoreman and does anything he desires to pass the time while en route from port to port. He may take the wheel occasionally, but is not required to do so.

"In short, the claimant's duties were the same as any regularly employed longshoreman on Puget Sound with the exception that he traveled from port to port with the vessel."

On January 31, F. Jondro, while on board the Belana assisting in launching a freight plank from the vessel to a dock at Bellingham, Washington, was struck on his right foot by an iron bar, sustaining an injury which resulted in disabling him. Thereafter Jondro filed a claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act. Appellants contended that the claimant was not entitled to any payments under that Act because Section 3 thereof provides that no compensation shall be payable in respect of the disability or death of a "member of a crew of any vessel" (c. 509, § 3, 44 Stat. 1426, 33 U.S.C.A. § 903). A hearing was had before the deputy commissioner, who determined that the claimant was not a member of the crew of the Belana. Appellants renew their contention here on appeal.

■ The definitions of "member of a crew" and the tests to be applied in determining the status of a worker, as set forth in the different opinions, are so many and varied that any attempt at reconciliation would prove futile. As heretofore stated by this court in the case of Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245, 246, there has not yet been "formulated a precise statement from which it can at once be determined just when an employee is a member of a crew and when he is a harbor worker", and therefore his classification must be determined by the circumstances of his own, individual case.

■■ Because there is no conflict in the evidence, appellants seek to have the claimant's status settled as a matter of law. In the case of South Chicago Co. v. Bassett, 309 U.S. 251, 258, 60 S.Ct. 544, 548, 84 L.Ed. 732, it was urged that "the question whether the decedent was a member of a 'crew' was a question of law," because the facts were undisputed. But the Supreme Court disagreed with that contention, saying that the "word 'crew' does not have an absolutely unvarying legal significance". The court there held that the deputy commissioner's determination of the employee's status was conclusive and not subject to judicial review if supported by substantial evidence. See also the opinion of the Circuit Court of Appeals for the Seventh Circuit rendered in the same case, and reported in 104 F.2d at page 522. We are consequently limited to an inquiry into the existence of any evidence to support the deputy commissioner's finding that Jondro was not a crew-member.

In their brief, in summing up their contention that Jondro was a member of a crew, appellants have very succinctly stated their argument: "While it is true that the claimant in the instant case took no part in the navigation, maintenance and upkeep of the

vessel upon which he was employed, and his services were more akin to that of a traveling laborer or longshoreman than those of a seaman engaged in navigational duties as the term has been generally recognized, he was nevertheless regularly attached to the Motor Vessel Belana, lived and slept thereon and aided in the furtherance of the purpose of the trade in which said vessel was engaged." In support of their position appellants rely very strongly upon the case of A. L. Mechling Barge Line v. Bassett, 7 Cir., 119 F.2d 995. In that case it was sought to determine the status of a cook, whose sole duty was to prepare and serve meals to the crew of a towboat which was in continuous operation. The cook slept on the boat, aside from the four days a month off duty. In holding that the employee was a member of the crew the court said (page 998 of 119 F.2d): "It is argued that the duties of the deceased were 'independent of navigation in their scope and might well have had their background on the shore.' In fact, the crux of defendants' argument is predicated upon this proposition. We are of the view that this position is untenable, and that a cook employed under the circumstances presented, was acting in aid and support of navigation and not independent therefrom. In fact, such services were perhaps as essential to the successful and continuing operation of the boat as were the services of any other member of the crew. * * *"

The situation presented in the instant case is different from that before the court in the Mechling case. Here it is conceded that "the claimant's duties were the same as any regularly employed longshoreman on Puget Sound with the exception that he traveled from port to port with the vessel". He had no duties at all to fulfill while the boat was underway. He was engaged to do the work of a longshoreman, and the reason for his being carried aboard the vessel was that it stopped at many ports on Puget Sound where no longshoremen were available. In South Chicago Co. v. Bassett, supra, 309 U.S. 251, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732, the Supreme Court declared that the question of a worker's status under the Act "concerns his actual duties" and stated that the purpose of the statute was to provide compensation for a class of employees whose "service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation". The distinction between a longshoreman and a crew-member seems to hinge upon whether or not the employee is "naturally and primarily on board [the vessel] to aid in her navigation". The work done by the claimant had no more relation to navigation than does that performed by a regular longshoreman engaged at a port to assist in loading or discharging the cargo of a boat. As was so well stated in Carumbo v. Cape Cod S.S. Co., 1 Cir., 123 F.2d 991, 995, "The requirements that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation appear to us to be the essential and decisive elements of the definition of a 'member of a crew'."

We conclude that there was ample evidence supporting the finding of the deputy commissioner that Jondro was not a member of the crew of the Belana.

The judgment of the District Court is affirmed.